May it please the Court, Charles Cervillo on behalf of the appellant Franswa Shammam. The issue in this case is the question of whether the 14 years of pre-charge delay prejudiced the appellant in his ability to mount a defense. The test, as the Court is aware, that is the clearly established federal laws announced by the United States Supreme Court is United States v. Levasco which states that there is a balancing to take place between the established prejudice to the defendant in the ability to mount a defense versus the justification for that delay by the state. In this case, there was a pretrial hearing in which the state trial court had an evidentiary hearing on the issue of prejudice and found actual prejudice to warrant requiring the state to justify the 14 years of delay. What was the actual prejudice? The actual prejudice as announced by the Court in his written decision was the faded memories of witnesses. That would always be the case, won't it? Well, it may well be over a 14-year period, but we have specific examples of prejudice from, quote, the faded memories of prosecution witnesses where on one statement that they'd made, say, in 1996, they say, A, which is not incriminatory, but by the time they get to trial 14 years later, they're saying, I don't recall that statement. For example, Monica Boway is the main witness against Appellant who came forth after their messy romantic breakup, and she gave a statement incriminating the Appellant. She said that the Appellant and his friend came to the doorstep on a sunny afternoon on September 16, 1994, where they announced that they had killed the victim in this case and handed her a bag of jewelry. That's the statement she made two years later. Within a couple of weeks, she recanted that statement, and in the detective's notes, it says, No, she withdraws the statement that he came to the doorstep on the day of the homicide. And she says, Oh, he told me this later. That was a crucial factor. But at trial, she didn't remember any of that, and the officer said, Well, I don't remember that specifically. I see it's written down in my notes, but I don't remember it. She didn't remember what? Making the statement or recanting? She did not remember making the statement or recanting. So she didn't remember making the statement at all? That she withdrew the statement? Okay. No, no, she recalled the doorstep statement. She didn't recall telling the officer later, as reflected in his notes, that she withdrew that statement, that appellant never said that on that date. That's a rather important factor prejudicing the appellant from faded memories. That's just one example. There are that particular witness got on the witness stand, who is the major witness against the appellant, and said, I don't remember about 100 times. I've chronicled that in the briefs. So my question has to do, yes, faded memory and inconsistencies, and I do not recall. It's all prejudice. I'm wondering if there's a different type of prejudice, that had he been indicted, then he would have received funds to pursue his own witnesses or expert witnesses, whereas if he's not indicted, he doesn't receive the funds necessarily to do that? That's correct. He's a 17-year-old kid at the time he's interviewed. He has no record, and he had no record afterward either. So they interview him the next day. He gives a detailed statement of where he was the day of the homicide, of course having nothing to do with the homicide, but he gives a detailed statement. They don't investigate one word of his statement, but 14 years later, they charge him, and statements that he made on that date, which could have been exonerating, of course, were lost in the sands of time, because 14 years later, he couldn't prove that he went to Johnny's restaurant for breakfast or to a particular Nissan dealer, as he said to these officers. And they even admit, yes, we should have checked what he said immediately. They didn't check it out at all. And thus, he gives a statement and walks out, and then 14 years later, he's charged, but he's 17 years old. He doesn't have the wherewithal to investigate this. Counsel, what would have happened if they just charged him within two years or three years? That's still a problem, isn't it? I mean, what you've described, the officer's failure to follow up on his story immediately, is a problem sort of no matter when it happens if they don't do it immediately. And it's exacerbated after 14 years of time. Sure. But I would concede that they didn't have to charge until Monica came forward two years later. They could have – they wouldn't have had any basis to charge him between the date of the homicide in September of 1994 and when she came forward in August of 96. Sure. If they come forward in 96, they're going to have a hard time verifying that he was at the Nissan dealer, aren't they? In 96, he would have a hard time. But nobody would accuse the police of unreasonably delaying. Well, appellants certainly did. Not in 1996. 1996, because they didn't do anything. From the time that the prime detective, Detective Rowe, left the case in May 1997, they didn't even have an investigator on the case until Detective Sirotella comes forth in 1998. The only thing Detective Sirotella does of any substance is he re-interviews Monica in the year 2000. And he had the case from 1998 to 2005. He admits on the stand he took a passive approach to this investigation. Perhaps he should have done more. These are his words. But he was taken off the archive team and didn't even have access to information. How is that a justification for this delay? That utterly fails to justify their delay in pursuing this case when their lead investigator between 1998 and 2005 does nothing but interview a witness who had already been interviewed. So the Court of Appeals decision applied the correct law, right? LAVOSCO is the correct law. And they did not apply LAVOSCO? The Court of Appeals. They gave lip service to LAVOSCO. But they said this, the Court of Appeals, we do not find an abuse of discretion in the trial court's denial of the motion to dismiss. So then we have to go look back to what did the trial court say? Bring in the seriousness of the crime. Right. And that is a huge factor. Where they tried to wordsmith their way around it on the Court of Appeals, it won't fly. And I just commend to the Court's attention the excerpt on pages 101, 102, where the trial court states in writing why he is denying this motion. He says, yes, there's been slight to moderate prejudice to the defendant from this delay. The justification by the people is minimal. But when I factor in the seriousness of the case and the people's desire to have these types of cases tried, then you lose, Mr. Defendant. I find no reason to dismiss the case. Well, those latter two factors are not part of the LAVOSCO test. That's what the trial court relied on. It's in black and white. And no wordsmithing by the Court of Appeal is going to deem that surplus, because it's embedded in his decision. So then we get to the Court of Appeal, and they make no independent finding of either prejudice or the reason for delay. They say that's not our function. And they don't do it. They find no abuse of discretion. But if the trial court used the wrong legal standard, that is a matter of law. The Court of Appeals quotes the trial court here. The trial court makes this one passing reference, taking into consideration the seriousness of the crime. Now, is that a violation of clearly established Supreme Court law? And if so, which case? It's a violation of LAVOSCO, which set out the standards of balancing. No. Did LAVOSCO say you can't take into consideration the seriousness of the crime? No. What it said was you can't take into – you have to take into consideration circumstances relevant to the facts of the case. Right. But what would have told the California Court of Appeals in clearly established Supreme Court law that this was error by the trial court? Well, the fact that LAVOSCO says here is the balance you do. You take the prejudice to the defendant and the justice to the case. Is that now exclusive of all other things, of all other considerations? It's exclusive of all non-fact-dependent considerations, because the Supreme Court said in LAVOSCO they have to be fact related to delay or prejudice. When I read the statement that the trial court made, taking into consideration the seriousness of the crime, without any elaboration here by the trial court, I mean, that just seems to me that that's subject to a number of interpretations, including that the State doesn't want to sort of willy-nilly go after somebody for murder unless they're confident of their case. And that seems like an entirely responsible judgment by the State for waiting until they have further evidence. Well, I think the ambiguity of that, as Your Honor has posted, is resolved by the fact that he was relying on and cited a case called People v. Penny, a pre-LAVOSCO State case, which said you must take into consideration the seriousness of the case and the impact. Take it into consideration for what purpose? Well, it's clear the purpose. The Court here used it in the appellant should have won just on the balance that the Court found. Okay. Well, I guess I'm missing. You said it's clear what he used it for. That's not clear to me. So I'd like you to tell me what you think the trial court took into consideration, the seriousness of the crime, for what purpose. Well, when the Court says when taking that prejudice which the Court found, this is the last line on page ER101, against the people's justification, which the Court found minimal, and then taking into consideration the seriousness of the offense and the public interest in favor of this type of prosecution, well, if you take in the seriousness, if that's a factor, it's always going to weigh in favor of the people. I still don't understand what you think he did when he took into consideration the seriousness of the crime. Well, I call it the butcher's thumb on the scale of justice, because if the Court is going to consider seriousness of the crime in a murder case and the public's interest in having those cases tried, it's always going to favor the State. If it had just been a burglary, then he might have found it differently? Well, if it had just been a burglary, there might have been a statute of limitations. There would have been a statute of limitations. And the statute of limitations is a separate. And if that's all he's doing is acknowledging the seriousness of the crime as a factor in the legislature's judgment that there's no statute of limitations on murder, Lovasco has already approved the statute of limitations as the general constraint on these kinds of prosecutions. That's correct. But I would also point to further up in the order where the Court again cites Penny and cites in the balancing. This is in the middle paragraph on page ER1. Balancing the public interest in favor of prosecution against the defendant in the weighing process, the seriousness of the crime for which the indictment is returned must be given appropriate consideration. And my point is that in that circumstance, it's always going to weigh against the defendant. It's like an automatic weight on the scale. And in this scale, which this Court had already established that the people's justification for that delay of, let's say, 12 years was minimum. And that was, I think, a favorable reading more than it deserved against the slight or the moderate prejudice to appellant. The appellant should have won on that balancing alone. Do we know in California State what the longest period of delay for a murder prosecution has been? Do we know? I don't think there's a resource to establish that other than cases. In the Federal cases, it seems like it's a year, two years. Well, just taking the Lovasco and Progeny, Lovasco was an 18-month delay, which they found not a problem under those facts. The Marion case was three years, but there was no argument of prejudice in Marion because it came up on a pretrial writ, so to speak. The Currency case that we've cited was 18 months. This is different by many degrees from those cases. And in one of those three cases, they said 18 months. Maybe it was Marion saying three years, that's significant delay. In this, we have delay from 1996 to 2008 of over 12 years. And during that time, the problem isn't just the delay, it's that there were all these leads that they didn't pursue. The defendant's statements, all of the family leads to say, we think this fellow is responsible, Salasker or Ophelia. They don't get off their duffs and go investigate. They just felt, okay, the defendant did it, we'll just wait until something falls in our laps and then charge him. So they waited 12 years after Monica and then charged him. And it was after the charging that Mr. Abdallah came forward with his statement. So I see my time is up. Thank you for the court's indulgence. Thank you very much, counsel. May it please the court, Deputy Attorney General Kristen Somerville for respondent appellee. The state court's rejection of the pre-indictment delay issue was neither contrary to nor an unreasonable application of clearly established federal law. The district court correctly looked to the last reason decision, the state court of appeal's opinion, not the trial court's determination, when it decided that the court of appeal correctly applied the two-step due process balancing test in Lovasco when it rejected Shamam's claim. The court of appeal conducted that analysis, and it did not consider the seriousness of the crime charged. But even if it had, or even if the trial court had considered that factor, which as the court of appeal noted, most likely it was simply noting that there is no statute of limitations, which Lovasco also noted as Judge Bybee has done. Well, but besides noting it, I mean, it's clear that, you know, it considered it an important factor, right? In other words, the fact that the legislature says there's no statute of limitations for this crime, you know, is a factor that you weigh in favor of the state. Isn't that the implication? Yes. The implication is that the legislature has deemed that there's no statute of limitation for murder, and the statute of limitation is the primary protection for a defendant in pre-indictment delay. And so it's, in a sense, it becomes a factor that you weigh in favor of the state. Yes, Your Honor. In the balancing of the, you know, the interest of the state versus the prejudice to the defendant. Yes. In this case, the seriousness of the crime does weigh in favor. But is that sanctioned by the Lovasco? Yes, Your Honor. In Lovasco, the United States Supreme Court did not establish a rigid due process balancing test. In fact, it left wide discretion to lower courts to apply the general due process standards and to specific facts of each individual case. So even if the court does examine the seriousness of the crime charged, that's not contrary to established Federal law. And Shamim cannot point to any United States Supreme Court case that states that it is improper to consider the seriousness of the crime charged. Counsel, I'd like to look at whether or not the factual determination by the trial court adopted by the Court of Appeal that there was a continuing investigation was an unreasonable determination of the facts. I'm particularly troubled by Detective Scully's testimony at trial where he said that the case in 2008, at the time of Shimon's arrest, was essentially the same case that it was in 2006 and in 1996. And if it was the same case at all three points in time, how could there possibly have been a continuing investigation? And how could that not be unreasonable delay? I mean, that's, you know, 1996 to 2006 to 2008. And in particular, other sources show that there was a period from 2000 to 2006 where the investigating police officers changed about five times and did nothing other than one of them re-interviewed Brenda Konya. So how could it be reasonable to say there was a continuing investigation during all these periods when nobody was doing anything? Your Honor, Detective Scully testified that in 2008 after he interviewed Abdallah and Abdallah corroborated BUA's testimony. It was at that point, and then he met with the DA's office, it was at that point that he decided the case was strong enough for charges to be brought. So stating that the case was always the same from 1996 to 2008, what he meant was BUA was the main witness. But Abdallah could have been interviewed the day after the murder. He was part of the people mentioned in the statement given by Shimon. Shimon said he had met up with Abdallah at some high school game, and he was there as a witness from the day after the murder. He was, but even in 2008 when Detective Scully interviewed him multiple times, he refused to give up any information. It was only after multiple attempts that he finally... Multiple attempts and threats. Detective Scully told him he would be subpoenaed as a witness regardless. Well, tell me, what is in the record to show that there was any investigation between 1996 and 2000? Your Honor, in 1996, that's when Shimon bought a plane ticket for BUA and sent her to Cancun for a year, sent her and her mother to Cancun. When she came back, so Detective Rowe... Was there a dispute about that at trial, or wasn't there a dispute about that at trial? She couldn't remember? Earlier on she stated, of course, back when she was dating the defendant back and forth, she stated, no, he didn't threaten me. Yes, he threatened me. No, he didn't send me there. But at trial she did testify that Shimon did threaten her family and sent her to Cancun where her father lived so that she wouldn't speak with law enforcement. Specifically, from 1996 to 2005, you were asking? In 1996, Detective Rowe tried to find BUA, couldn't find her. From 1998 to 2004, Detective Saratella stated that he was looking for evidence and witnesses to corroborate BUA. He attempted to find her. He continued to do computer checks and conduct interviews with former witnesses. And he finally found her in 2000 when a computer check revealed where she was. Saratella also discussed the case with the DA's office, and the DA's office said that they didn't have enough at that point. In 2004, Detective Goldberg was assigned to the case. He interviewed Bino's family. He followed up on new leads. He contacted a crime reconstruction expert to see if he could corroborate BUA's testimony. He interviewed new and old witnesses, and he requested DNA testing on a hair that was found in Bino's bathroom. DNA testing was in its infancy when the crime was committed, so there wasn't a lot of that sort of testing done. So that covers 1996 to 1997, which shows that there was an ongoing investigation. Even though the file changed hands, each detective that picked it up continued to interview witnesses, to conduct testing, to try and find the main witness that was the strongest witness in this case. But didn't this delay, whether you want to characterize it as purposeful or not, didn't it, in fact, benefit the prosecutor? Because when Monica Bohe came forward in 1996, she could have been impeached because she had just broken up with Shimon. And in addition, according to her own statement, she could have been indicted as an aid or a better accessory after the fact, whereas by the time the government decided to prosecute, the statute of limitations had run against her and a long period of time had passed. So coming and testifying at trial, she couldn't be impeached on one ground and she couldn't be prosecuted on the other. That's true, Your Honor, but as the magistrate judge said in the R&R, which is correct, all of her inconsistencies were exposed for the jury. She was vigorously cross-examined and all of that information was given to the jury. So Shimon was not prejudiced by the fact that he couldn't impeach her testimony. And even if it benefited the people, that doesn't show that the purpose was in bad faith. The delay was in bad faith, excuse me. But this Court doesn't even need to reach whether the investigative delay outweighs the prejudice because Shimon shows no actual prejudice. He only provides speculation that certain witnesses may have testified in a certain way. Well, I think the trial court found that there was actual prejudice. The trial court found that both sides were prejudiced by fading witness memories. But every trial – I wouldn't even need it to go on to the remainder of the analysis if we had not found actual prejudice. That's correct. The trial court was very thorough in this case. But even as the court of appeal correctly stated, prejudice is different than actual prejudice. And for actual prejudice, as Levasco has stated, the defendant must come forward with concrete examples of the evidence that was lost, not just speculation. Speculation isn't good enough. You mentioned a little while ago that there is no bad faith in this case, bad faith by the investigative agencies. Is that a requirement under Levasco, that there be a showing of bad faith? Levasco basically explained that an ongoing investigation was a very strong justification for pre-indictment delay and also discussed that whether bad faith would be a poor justification. So, yes. But Levasco is not very helpful in our situation in explaining what an ongoing investigation is. In other words, if you have a cold case, and I don't know, we'll assume the detective's got a dozen of them, and the detective decides not to do anything about this cold case and work on this one and waits three years to do something, is that a continuing investigation? It may be and it may not be, but that's not the case here. The case never went cold in this case. The investigation was always ongoing. This case was never shelved. Investigators continued to look for new leads, and the three-day evidentiary hearing established that it was an ongoing investigation. I see that my time is up. May I briefly continue? Yes, you may be seated. Okay. Thank you. I just request that this court affirm the district court's denial. Thank you. Thank you. Your time was up. Yes, you can have one minute, though. I can tell you're anxious to have one minute. Respondent says the case never went cold. They indeed said that at the hearing, except the evidence belies that statement, given that when Roe left the case in May of 97, there wasn't even an investigator between May of 97 until Sirotella comes in 98, and when Sirotella comes on for the next seven or eight years, the only thing he did of any substance was reinterview a witness that had already been interviewed. That is not a good-faith investigation when all of these leads, provided primarily by the victim's family. Or is that sufficient to show bad faith? I think so. When you're purposely ignoring leads given you by the victim's family, and you're sitting on that, and there they are, and they were pretty good leads, given that the lead to sell, Asker, was about a drug dealer who was violent, belonged to the Kalasho gang that killed and murdered people, and then this woman, Ophelia, who the victim did not like, and she, Ophelia, warned the Binot family that if they didn't stop talking about this case, they were going to end up dead. Now, they don't even go talk to Ophelia after that type of threat is made. It's mind-boggling. That type of purposeful ignorance and not pursuing obvious leads is the essence of bad faith. But I'm not sure I need to show bad faith. I just need to show that they did not justify the length of this delay before they brought charges. Thank you. I'd ask the Court to reverse the finding of the District Court. Thank you very much, Counsel. Shimon v. Paramo is submitted.
judges: Tashima, Wardlaw, Bybee